# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KEITH McLENNON,
*Plaintiff*,

v.

No. 3:21-cv-1337 (JAM)

VIKTORYIA STORK,
*Defendant.*

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Keith McLennon is a prisoner in the custody of the Connecticut Department of Correction (DOC). He has filed this lawsuit *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against defendant Viktoryia Stork who was employed as a nurse with the DOC. McLennon alleges that Stork was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when she failed to move him from a general population housing unit to the prison's medical unit.

Stork has moved to dismiss the complaint in part on the ground that McLennon did not exhaust available prison administrative remedies. I agree and will grant the motion to dismiss.

### BACKGROUND

The following facts as alleged in the amended complaint are accepted as true only for the purposes of this ruling. For some time prior to February 2021, McLennon was a prisoner at Osborn Correctional Institution where he was housed in the prison's medical unit due to ongoing mobility issues.[1] A doctor had placed him there because he was experiencing pain and swelling in his lower extremities.[2]

---

[1] Doc. #9 at 5.
[2] *Ibid.*

1

McLennon was briefly transferred to another prison facility for assessment.[3] When he returned to Osborn, McLennon was placed in D-Block, which is not part of the medical unit.[4]

After he was back at Osborn, McLennon went to sick call, where Stork allegedly "denied [him] the right to go back" to the medical unit.[5] Stork told him he had no disability and that the doctor had been "crazy" for placing McLennon in the medical unit.[6] McLennon claims that Stork was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[7]

Stork now moves to dismiss McLennon's amended complaint on two grounds.[8] First, she argues that McLennon has failed to plead sufficient facts to state a claim.[9] Second, she argues that McLennon failed to fully exhaust available prison administrative remedies.[10]

### DISCUSSION

The standard that governs a motion to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a plaintiff's claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). A court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).[11]

---

[3] *Id.* at 6.
[4] *Ibid.*
[5] *Ibid.*
[6] *Ibid.*
[7] *Id.* at 5–6.
[8] Doc. #14.
[9] *See* Doc. #14-1 at 14–16.
[10] *See id.* at 16–19.
[11] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

If the plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

The Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *See Ross v. Blake*, 578 U.S. 632, 638–39 (2016). It applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative procedures must occur regardless of whether the procedures can provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–93 (2006).

The DOC's procedure for pursuing a health-related grievance is set forth in Administrative Directive 8.9 (AD 8.9). AD 8.9 contemplates at least three stages of review for a prisoner seeking a remedy for complaints relating to health services. *See Milner v. Laplante*, 2021 WL 735909, at *2–3 (D. Conn. 2021) (describing requirements of AD 8.9).[12] The first

---

[12] The current version of AD 8.9 is available at *Administrative Remedy for Health Services*, CONN. DEP'T OF CORR., https://portal.ct.gov/DOC/AD/AD-Chapter-8 (last visited Sept. 6, 2022) [https://perma.cc/6P6C-9RAQ]. McLennon's grievance, however, was governed by a prior version of the administrative directive, which is not a part of the record. The directive that was in place at the time of McLennon's grievance may be found in some of the DOC's filings in other cases. *See, e.g.*, Doc. #47-10 to *Otero v. Purdy*, 3:19-cv-1688-VLB (D. Conn.) (AD 8.9). I take judicial notice of this document. In addition, the Court's opinion in *Milner*, 2021 WL 735909, at *2–3, summarizes AD 8.9 as it was written at the time of McLennon's grievance.

stage is informal resolution, whereby a prisoner must attempt to resolve the issue face-to-face with an appropriate staff member or by means of a written request for resolution to a supervisor on an Inmate Request Form (CN 9601).[13] The prisoner must clearly state the problem and remedy requested.[14] If the prisoner makes a written request, a prison official must respond within 15 business days.[15]

The second stage is the filing of a formal request for a Health Services Review (HSR). To do this, the prisoner must complete a standardized Inmate Administrative Remedy Form (CN 9602) seeking a review of either "a diagnosis or treatment[,] including a decision to provide no treatment," or "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider[.]"[16] If the prisoner is complaining about a diagnosis and treatment, the HSR Coordinator must schedule an appointment with an appropriate health care provider to determine a proper course of action, if any.[17] For reviews of an administrative issue (including alleged misconduct by a health services provider), the HSR Coordinator must render a disposition within 30 days.[18]

The third stage under AD 8.9 is the filing of an appeal. To do this, the prisoner must file an Appeal of Health Services Review (CN 8901) within 10 business days of receiving an unsatisfactory disposition of a Health Services Review.[19] The health services provider or the facility's health services director must then respond within 15 business days of receipt of the appeal.[20]

---

[13] *See* Doc. #47-10 at 4 (¶ 10) to No. 19-cv-1688.
[14] *Ibid.*
[15] *Ibid.*
[16] *Id.* at 3–4 (¶¶ 9, 11).
[17] *Id.* at 4 (¶ 11(A)).
[18] *Id.* at 5 (¶ 12(A)).
[19] *Ibid.* (¶ 12(B)).
[20] *Ibid.* (¶ 12(C)).

The records filed by McLennon along with his initial complaint show that he initiated but failed to fully exhaust the DOC's grievance procedure for health-related concerns. On an Inmate Administrative Remedy Form (CN 9602) dated March 11, 2021, McLennon requested a Health Services Review of the failure to place him in a medical unit.[21] I will assume for present purposes that this second-stage request for a Health Services Review was preceded by a first-stage effort to engage in an informal resolution, because the record also includes a separate Inmate Request Form, also dated March 11, 2021, in which McLennon states that he had previously written to Stork and that he was "still getting the run around" about his placement in a medical unit.[22]

On April 7, 2021, prison officials timely denied McLennon's HSR request on the ground that "medical does not decide where you are housed, custody decides housing."[23] McLennon was informed that he could appeal the decision to Health Services.[24] But the records filed by McLennon do not reflect that he ever appealed pursuant to AD 8.9.[25] And despite the fact that Stork has specifically moved to dismiss for failure by McLennon to file such an appeal, McLennon does not claim that he did so.

Accordingly, I conclude that McLennon did not properly exhaust administrative remedies. The grievance records that he himself has filed do not reflect that he did so, and he does not dispute Stork's contention that he did not file an appeal under paragraph 12(B) of AD 8.9.

---

21 Doc. #1-2 at 5–6. The form reflects a checkmark in a box for "All Other Health Care Issues" rather than "Diagnosis/Treatment." *Id.* at 5.
22 *Id.* at 8.
23 *Id.* at 6.
24 *Ibid.*
25 *See* Doc. #47-10 at 5 (¶ 12(B)) to No. 19-cv-1688.

I am mindful of course that the issue of whether a prisoner plaintiff has exhausted his remedies as required under the PLRA is an affirmative defense and that the defense is often dependent on facts disclosed during discovery and may be the subject of a motion for summary judgment rather than a motion to dismiss. But where a plaintiff has chosen to file grievance documents that do not reflect that he fully exhausted his administrative remedies and where a plaintiff does not dispute a defendant's contention that he failed to complete a necessary step to fully exhaust his remedies (or otherwise claim that the administrative remedy process was not available), then it is proper—and fully consistent with the judicial efficiency interests of the PLRA—for a court to grant a defendant's motion to dismiss for failure to exhaust administrative remedies.

Indeed, the Second Circuit has repeatedly affirmed the dismissal of prisoner complaints by way of a motion to dismiss for failure to exhaust administrative remedies where the controlling facts were not in dispute. *See Grafton v. Hesse*, 783 F. App'x 29, 30–31 (2d Cir. 2019); *Cole v. Miraflor*, 305 F. App'x 781, 783–84 (2d Cir. 2009); *Boddie v. Bradley*, 228 F. App'x 5, 7 (2d Cir. 2006); *Yeldon v. Ekpe*, 159 F. App'x 314, 316 (2d Cir. 2005). The Second Circuit has also affirmed that a court may *sua sponte* dismiss a prisoner's complaint where it is readily apparent that the prisoner did not exhaust administrative remedies and provided that the prisoner has received notice of the court's intent to dismiss and has had an opportunity to be heard. *See Snider v. Melindez*, 199 F.3d 108, 112–13 (2d Cir. 1999).

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motion to dismiss (Doc. #14). Although I will grant the motion to dismiss the amended complaint, I will do so subject to the right of McLennon to file a motion for reconsideration within 21 days if he has

good faith grounds to allege or show that he fully exhausted his remedies pursuant to paragraph 12 of AD 8.9 by filing an appeal from the denial of his request for a Health Services Review. The Clerk of the Court shall close this case subject to re-opening in the event that McLennon files a motion for reconsideration.

It is so ordered.

Dated at New Haven this 7th day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge